## THE SEITZ BREWING COMPANY

*v.*

## JANE AYRES et al.

[Filed May 15th, 1900.]

1. Parol declarations made by lessors' agent at the time of the execution of a guaranty for the payment of rent, to the effect that the lease would be altered by inserting a clause providing for the abatement of the rent specified in the lease and guaranty, is inadmissible in an action to reform the lease on the ground of mistake.

2. Where an oral promise was made that a guaranty for the payment of rent should not be delivered until the lessors consented to the insertion of a clause in the lease for the reduction of rent, and it was delivered with nothing to indicate the existence of such condition, the guarantor was bound upon the facts shown in this case.—*Held*, that the evidence was insufficient to warrant a reformation of the lease on the ground of mistake.

*Mr. Irwin W. Schultz,* for the complainant.

*Mr. John H. Dahlke* and *Mr. William H. Morrow,* for the defendants.

REED, V. C.

On December 31st, 1898, Jane Ayres and others, owners of a hotel property in Oxford, Warren county, New Jersey, made a lease to William R. Johnson of said property. for a period running from the date of the lease to April 1st, 1900, at a rental of $50 a month. This lease was made on that date to enable Mr. Johnson to apply for a license at the December Term of the Warren county court of common pleas. On account of the failure to get the signatures to his application in time, it was not presented to the court at that term. On January 5th the lease was re-executed by the lessor and lessee, the term being changed so as to begin on April 1st, 1899, instead of December 31st, 1898. This was the only change in the lease as originally drawn.

It was agreed that the complainant should become surety for the payment of the rent, and on January 9th it executed a guaranty that Mr. Johnson should pay the rent for which, the lease stipulated. It was expected that a license would be granted to Mr. Johnson at the April Term of the county court, but the court refused to grant the license.

The complainant claimed that at the time when it executed the guaranty, Mr. Dahlke, the attorney who had drawn the lease and who had gone to Easton to the place of business of the complainant to procure the signature to the guaranty, promised that the lease should be altered, so that the rent, in case no license should be granted, would be $24.16 a month instead of $50.

Complainant by its bill asks that the lease may be reformed and the defendants enjoined from collecting more than $24.16 a month.

There seems to be some contrariety in the testimony as to what took place at the interview between Mr. Dahlke and the officers of the complainant at the time of the execution of the guaranty. Mr. Dahlke says that the conversation was only in respect to the rent for the month of April, during which month the house would be without license, as the court met late in April. He says he agreed to have the rent for that month reduced to $25. He says that nothing was said about an alteration in the lease to the effect that the rent for the entire term, in case no license was granted, should be reduced from $50 to $25 a month.

On the other hand, the two Messrs. Seitz who were present, and Mr. Johnson, the lessee, swore with more or less positiveness, that the agreement applied to all the months in the term.

I do not consider it necessary to discuss the weight of the testimony upon this point, for if it be conceded that the lease embodied a contract which the lessors and the lessee intended to enter into, then I do not perceive how any relief can be accorded to the surety, even if its witnesses correctly state the facts of that interview. If the promise of Mr. Dahlke was merely that the lease should be altered, *i. e.,* that the effect of the guaranty should not be what the writing as executed purported, then the testimony would be incompetent because it varied the terms of a

written instrument. *Wright* v. *Remington, 12 Vr. 48.* And if the promise was that the guaranty should not be delivered until the lessors consented to the insertion of a clause for diminution of rent, nevertheless the paper having been delivered, with nothing to indicate the existence of such condition, the guarantors were bound. *Ordinary* v. *Thatcher, 12 Vr. 403.* If the promise discharged the guarantors their defence was adequate at law.

The complainant's case must, in my judgment, rest upon its right to have the original contract between the lessor and lessee reformed. If Mr. Johnson had such right in the particular mentioned, then I think the complainant as surety has the right to assert the same right. Aside from the evidential force of a letter written by Mr. Dahlke to Mr. Johnson under date of January 3d, there would be, in my judgment, no colorable case for reformation. The complainant's case would depend solely upon the testimony of Mr. Johnson, the second time he was called to the stand. He then said that he received a letter signed Jane Ayres, written by Mrs. MacMiller, saying that if license was not granted the rent should be $290. This letter he was unable to produce at the trial, although he produced the letter of January 3d just mentioned, another letter of January 13th, and a postal card, which he says he kept in his pocket.

Mr. Johnson is contradicted by the testimony of Mrs. Ayres and Mrs. MacMiller, and by the fact that he subsequently signed the lease as it is. Therefore I repeat that if it was not for the letter of January 3d, there would be no ground whatever for reformation. In the letter of January 3d, 1899, addressed by Mr. Dahlke to William K. Johnson, the former says:

"I received a letter from Mrs. Ayres to-day in reference to the lease. I suppose they have talked over the matter with you on Monday, as they say the rent, in case you do not get the license, is to be $290, and they want the matter settled this week."

This letter is of course very persuasive that Mr. Dahlke had got from some source the information which he conveyed to Mr. Johnson. The letter itself is of course mere hearsay. But Mr. Dahlke swears that while he has no recollection of the facts, he

has no doubt that he communicated everything actually as it was to be done. While this letter is persuasive that Mr. Dahlke had received a communication to the effect that if the hotel was without license it would be rented for $290, the letter which he received is not in evidence. The three persons, one of whom must have written it if it came from a source which bound the lessors, have no recollection of writing such a letter, or of having ever agreed to rent the hotel property for less than $50 a month.

Then there are puzzling circumstances in respect to the transaction. The lease, without doubt, was originally written on December 31st, 1898. Mr. William N. Seitz, who went with Mr. Johnson to see about renting the property, says that the lessors refused to rent for less than $50 a month. He says that he told them that the property had no license, and they might not secure a license, and he asked them for a reduction in rent in case no license was granted, and they refused to agree to a reduction of rent in case no license was granted.

Now, the court met on January 2d, and, as already remarked, by reason of the failure to get the application for the license signed, no application was presented. On January 3d—the next day—Mr. Dahlke appears to have written the letter in question. The lease was drawn up, as already remarked, providing for $50 a month payment of rental. Mr. Seitz did not see the lessors again about the lease, nor does Mr. Johnson say he saw them again before January 3d. If the lessors wrote to Mr. Johnson and to Mr. Dahlke, they must have done so early on January 3d, or on the day the court sat. Now, what induced them to change their mind so suddenly is not apparent.

Again, two days after Mr. Dahlke wrote this letter to Mr. Johnson, and while its contents must have been fresh in the minds of both Mr. Dahlke and Mr. Johnson, the original lease was re-executed, leaving the rental at $50 a month.

Then again, no one seems able to explain the meaning of the figures $290. Mr. Seitz said that this amount was not mentioned at the interview on January 9th, when the guaranty was executed, and that the only sums mentioned were $25 and $50 a month.

Then again, Mr. Johnson, who was present at that interview

13

and heard the conversation between the Messrs. Seitz and Mr. Dahlke respecting the reduction of rent, said nothing about the original agreement between him and the lessors, that the rent without license was to be $290. If Mr. Johnson had so recently received a letter from the lessors, it would have been natural, when he heard Mr. Dahlke speaking of getting the lessors to provide for an abatement of the rent, in case no license was granted, for him to have said: "Why, it was agreed with me that there should be a reduction, and I have letters to that effect both from the lessors and Mr. Dahlke."

Nor did Mr. Johnson mention the letter which he says he received from the lessors, until he was recalled to the stand the second time. Besides, he says he received a copy of the lease soon after—he thinks three days—after it was executed. He does not seem to have examined it to see whether the lease had been changed in the respect he swears it was to have been altered to conform to the verbal agreement.

But, notwithstanding these somewhat curious features of the case, it may be admitted that if the case turned upon the balancing of probabilities, it would seem more than probable that a letter was written to Mr. Dahlke by some one of the lessors, the contents of which is represented by Mr. Dahlke's letter, and that the failure to alter the original lease, upon its second execution, was a mistake. But it needs a degree of evidence stronger than probability to justify the court to reform an instrument to which parties have subscribed their names. The stability of written contracts is guarded by a wholesome rule which requires the clearest evidence of mistake to support a judicial alteration of what the parties themselves have put in writing. *Graham* v. *Berryman, 4 C. E. Gr. 29; Burgin* v. *Giberson, 11 C. E. Gr. 72; Hendrickson* v. *Wallace, 4 Stew. Eq. 604; Henderson* v. *Stokes, 15 Stew. Eq. 586; 2 Pom. Eq. Jur. § 859,* and cases cited.

The probative force of such testimony must be so convincing as to, in the language of some of the cases, leave no reasonable doubt of the terms of the verbal agreement or of the mistake of the facts which would justify its substitution for the written. *Stockbridge Iron Co.* v. *Hudson River Iron Co., 102 Mass. 45; Hupsch* v. *Resch, 18 Stew. Eq. 657; 1 Dick. Ch. Rep. 609.*

The bill must be dismissed.